# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02C 3661 | **DATE** | 10/16/2003 |
| **CASE TITLE** | NOVA CHEMICAL, INC. vs. FRAWLEY, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (12-1) for summary judgment is denied. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 20 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NOVA CHEMICALS, INC.,

    Plaintiff,

v.

DANIEL FRAWLEY and KATHLEEN CULLEN,

    Defendants.

DOCKETED
OCT 2 0 2003

No. 02 C 3661
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is an action to pierce the corporate veil of Frawley Trading Corporation ("FTC") and hold the owners and sole shareholders, Daniel Frawley and Kathleen Cullen, personally liable for a $750,000 judgment entered against FTC and in favor of Nova Chemicals ("Nova") in November 2000.[1] Nova now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Factual Background

Nova claims that Frawley and Cullen, as FTC's dominant (and indeed only) shareholders, preferred themselves as creditors to the detriment of Nova by transferring $750,000 from FTC to their personal checking accounts for their own personal use and benefit, less than one month after the jury verdict award in Nova's favor. Specifically, $600,000 was transferred to Frawley's

---

[1] A separate judgment in the amount of $63,497.46 representing an award of Nova's costs as the prevailing party in the underlying litigation was also entered against FTC. FTC and, Nova contends, the individual owners, are responsible for that unsatisfied judgment as well as the interest that has accrued on both judgments from the dates those judgments were final.

personal checking account, and $150,000 was transferred to Cullen's personal checking account. These transfers allegedly depleted FTC's remaining assets, causing it to go out of business shortly thereafter and thus leaving nothing for Nova to collect in satisfaction of its judgment. In addition, Nova claims that Frawley and Cullen used FTC funds to pay for personal expenses, including several credit card purchases, a veterinary bill for Frawley's dog, and water bills and a homeowner's insurance policy for personal properties owned by Frawley.

In response to these charges, Frawley argues that he became a perfected secured creditor, three years before Nova became a lien creditor, and that the $600,000 transferred to him was encumbered by secured lines of credit.[2] On November 1, 1997, Frawley entered a security agreement with FTC and executed a revolving note by FTC Corporation as "Maker" and himself as "Lender" in the amount of $3,000,000. Shortly thereafter, Frawley filed a U.C.C. Financing Statement. In the ensuing years, Frawley executed two revolving note extensions extending the maturity date of the revolving note. In 2000, the accounting firm of Letke & Associates reviewed FTC's balance sheets as of December 31, 1999, the related statements of income, changes in stockholders' equity, and cash flows for the years then ended.[3] This review found that FTC did indeed have two revolving lines of credit with its stockholders in the amount of $3,000,000 and $1,000,000 and collaterized by substantially all of the business assets of FTC.

---

[2] Cullen maintains that a portion of the $150,000 transferred to her was for year end compensation as an employee of FTC, but per bankruptcy filing and a prior order of Judge Leinenweber, the action against Cullen is stayed.

[3] The review was done in accordance with the Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. Satisfying its main purpose, the review found that no material modifications should be made to the financial statements in order for them to be in conformity with generally accepted accounting principles.

Frawley contends that, pursuant to the terms and conditions of the security agreement and the $3,000,000 revolving note, he made two separate loans to FTC. First, he claims that in 1999 he personally loaned FTC $275,000, and the General Ledgers for FTC for 1999 and 2000 reflect subordinated debt to Frawley in this amount.[4] Frawley further alleges that he subsequently loaned FTC another $400,000, which he claims is evidenced by a wire transfer order confirmation dated October 20, 2000 and FTC's October 2000 general monthly ledger noting receipt of a $400,000 "Cash" transfer, identifying the debt as subordinated, and cross-referencing the $400,000 transfer as "Subordinated Debt - Dan Frawley" (a ledger alleged use to keep track of the debt FTC owed Frawley which was subjected to a perfected security interest). This $400,000 transfer allegedly increased the subordinated debt owed by Frawley to FTC from $275,000 to $675,000.

As to the charge regarding his use of FTC funds to pay for personal expenses, Frawley alleges that FTC maintained a running accounting of monies that either he owed to FTC or FTC owed to him in a "Due to/from Dan Frawley" ledger. Frawley alleges that bills paid by FTC on behalf of him were charged to this ledger at all times. In other words, when FTC would pay, in part or in total, a personal bill or expense of Frawley, the amount of the payment would be offset against the outstanding perfected secured debt of FTC owed to Frawley or revolving secured lines of credit. Nova disputes this by pointing to a few examples where personal bills paid by FTC do not appear to be reflected in a corresponding charge in the ledger. Nova also notes that

---

[4] As an aside, the Letke & Associates review of FTC's balance sheets concluded that the subordinated debt owed to the stockholders was accounted for in the same way as any other debt would be to any other creditor and that no material modifications to the financial statements were needed for them to be in conformity with generally accepted accounting principles.

3

for every month until May 2000, the General Ledgers reflect that Frawley owed the corporation significantly more than what was owed by the corporation to him in subordinated debt and accrued interest on the subordinated debt.

Analysis

Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). Put another way, "where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate." *Collins v. American Optometric Ass'n*, 693 F.2d 636, 639 (7th Cir. 1982). The question is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). To pierce the corporate veil under Illinois law, Nova must demonstrate that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual . . . no longer exist" and that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Hystro Productions, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994). In this case, there are three issues that address whether piercing FTC's corporate veil is appropriate: (1) whether Frawley preferred himself as a creditor to the detriment of Nova or whether he was a perfected secured creditor with priority over judgment lien holders such as Nova; (2) whether Frawley used FTC funds as his own; and (3) whether, as an alternative to piercing FTC's

4

corporate veil, the transfers at issue constitute fraudulent conveyances under the Illinois Uniform Fraudulent Transfer Act (UFTA).

Did Frawley Prefer Himself as Creditor to the Detriment of Nova?

Nova's first basis for piercing the corporate veil is that Frawley preferred himself as a creditor to the detriment of other creditors, including Nova. As a general rule, corporate officers have a duty not to make transactions for themselves which are damaging to the corporation and profitable to them. *O'Connell v. Pharmaco, Inc.*, 493 N.E.2d 1175, 1181 (Ill. App. Ct. 1986). If such transactions do occur, the officers have the burden of establishing the fairness of any transaction in which they acquired corporate assets. *Libco Corp. v. Roland*, 426 N.E.2d 309, 312 (Ill. App. Ct. 1981). Officers cannot serve themselves first by manipulating the affairs of the corporation to the detriment of creditors. *Mid-American Elevator Co., Inc. v. Norcon, Inc.*, 679 N.E.2d 387, 392 (Ill. App. Ct. 1996). It is also improper for corporate officers to manipulate corporate property so as to pay their own claims against the company to the loss of creditors. *Rosebloom v. Whittaker*, 33 Ill.App. 442, 443 (Ill. App. Ct. 1989). Accordingly, a "sole stockholder cannot wrongfully cause the transfer of all of the property of the corporation to be made to himself so as to deprive a creditor of the corporation the payment of his debt; and, if he does so, the creditor may hold him responsible for that payment." *State Bank of Cerro Gordo v. Benton*, 317 N.E.2d 578, 580 (Ill. App. Ct. 1974). In other words, a creditor can bring an action to pierce the corporate veil and hold officers personally liable for wrongfully converting or misappropriating funds. *Circle Sec. Agency Inc. v. Ross*, 425 N.E.2d 1283, 1286 (Ill. App. Ct.

1981), *superseded by statute on other grounds, Levy v. Markal Sales Corp.*, 724 N.E.2d 1008
(Ill. App. Ct. 2000).

On the other hand, a perfected secured creditor defeats a lien creditor. *See Blatstein v. Blatstein*, 226 B.R. 140, 150 (E.D. Pa. 1998), *aff'd in part, rev'd in part on other grounds*, 192 F.3d 88 (3rd. Cir. 1999). A lien creditor has priority over a secured creditor only if the lien attaches before the security interest is perfected. *Blatstein*, 226 B.R. at 150 (quoting *Trinity Holdings, Inc. v. The Firestone Bank*, Civ. No. 92-203, 1994 WL 449258, *8 (W.D. Pa. May 4, 1994)). Nova attempts to argue that there are special rules regarding perfected secured creditors when a corporation is insolvent, but "the law is that the directors or officers of a solvent corporation, acting in good faith, may deal with it, and loan it money, and take security therefor, and that the subsequent insolvency of the corporation will not affect their rights of action to recover such loans, or enforce their securities." *Illinois Steel Co. v. O'Donnell*, 41 N.E. 185, 185 (Ill. 1895); 13 Ill. Law & Prac. Corporations § 204 (2002). There is no reason for subordinating a secured loan made to a corporation by a shareholder, officer, or director to the claims of its general creditors in the absence of bad faith, fraud, or overreaching.[5] *In re Gaynes*, 21 B.R. 504 (Bankr. D. Ariz. 1982); *Abraham v. Lake Forest, Inc.*, 377 So.2d 465 (La. Ct. App. 1979);

---

[5] Nova points out that although there are circumstances where directors or dominant shareholders can prefer themselves or relatives over the claims of other creditors, those transactions generally have been allowed because they survived the close scrutiny of the court and were found to be fair and in good faith. *See Illinois Steel Co.*, 41 N.E. at 186 (preference given to relative of director or officer not invalidated "if it is otherwise fair and free from fraud."); *Hanson v. Bradley*, 10 N.E.2d 259, 263 (Mass. 1937) (secured creditor entitled to rights "except so far as in exceptional cases courts find it necessary to restrict their rights in order to prevent fraud or injustice through the use of corporate forms."); *Beaver Park Co. v. Hobson*, 283 P. 772, 775 (Co. 1929) (officer of corporation has right to become creditor "in the absence of bad faith or fraud."). In the face of all the factual disputes in this case, however, such close scrutiny of the transactions at issue is not yet possible.

*Troglia v. Bartoletti*, 451 P.2d 106 (Mont. 1969); *Dean v. Kellogg*, 68 N.E.2d 898 (Ill. 1946); *Dunham v. Natural Bridge Ranch Co.*, 147 P.2d 902 (Mont. 1944); *Hanson v. Bradley*, 10 N.E.2d 259 (Mass. 1937); *Beaver Park Co. v. Hobson*, 283 P. 772 (Colo. 1929).

Therefore, if Frawley was a perfected secured creditor, then the funds Nova seeks were properly encumbered by a prior perfected security interest. It is beyond dispute that Frawley entered some type of security agreement with FTC, attempted to execute a revolving note with FTC in the amount of $3,000,000, and filed a financing statement in 1997. However, there are genuine issues of material fact as to whether these actions perfected as to Frawley any security interest as to FTC's deposit account and/or permitted Frawley to make the transfers at issue to himself. Furthermore, even if they did, there are further questions regarding: (1) how much money Frawley loaned to FTC; (2) how much of this debt was paid off by FTC's payment of Frawley's personal expenses and cash taken from the corporation by Frawley; (3) how much of the debt was due and owing in December 2000, the time at which FTC transferred the $600,000 to Frawley personally; and (4) whether Frawley's conduct, even though permissible per se because of his status as a perfected secured creditor, was nonetheless improper because of bad faith, fraud, or overreaching. All of these unresolved issues address the fundamental unresolved issue of whether and to what extent Frawley was entitled to transfer money to himself in December 2000 in priority above judgment lien holders such as Nova. Accordingly, summary judgment on the basis that Frawley preferred himself to the detriment of Nova is inappropriate.

Nova attempts to argue that Frawley did not perfect his security interest in FTC's deposit account. Pursuant to the Illinois U.C.C., when a deposit account is taken as original collateral,

the only method of perfection is obtaining control over the deposit account. 810 ILCS 5/9-312(b)(1). A secured party has control if:

(1) the secured party is the bank with which the deposit account is maintained;
(2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or,
(3) the secured party becomes the bank's customer with respect to the deposit account.

810 ILCS 5/9-104. Here, FTC argues that Frawley has failed to identify an authenticated record with the bank holding FTC's deposit accounts granting Frawley control over the deposit account, as required under the statute. However, it is not Frawley's burden in opposing summary judgment to produce such evidence. Rather, FTC, as the movant, must establish that uncontested facts establish that Frawley *did not* have control over the deposit account and that he therefore *had not* perfected his security interest at the time of the transfers. FTC has not established this, and therefore summary judgment is inappropriate on this basis as well.

Did Frawley Use FTC Funds as His Own?

Nova's second basis for piercing the corporate veil is that Frawley and Cullen used FTC funds to pay for personal expenses and thus commingled funds. *See Macaluso v. Jenkins*, 420 N.E.2d 251, 256 (Ill. App. Ct. 1981). In response, Frawley claims that payment by FTC of any of Frawley's personal, non-business related expenses was offset against the outstanding perfected secured debt of the Corporation owed to Frawley or revolving secured lines of credit. If FTC and Frawley did accurately account for such personal use of corporate funds, then piercing the corporate veil on the ground of intermingling of funds may not be appropriate. *See Amsted*

8

*Indus., Inc. v. Pollak Indus., Inc.*, 382 N.E.2d 393, 398 (Ill. App. Ct. 1978) ("The record indicates that any loans Pollak made to the corporations were paid back. . . . [t]here is no evidence that Pollak borrowed an excessive amount of money from [one of the corporations] or that he never intended to pay back what he did borrow. Thus the record supports the inference that an intermingling of funds did not occur."). However, there are unresolved factual issues as to whether FTC accurately maintained a running accounting of monies that either Frawley owed to FTC or FTC owed to Frawley and to what extent, if it did at all, the amount Frawley owed to FTC exceeded the amount FTC owed to Frawley. In the presence of issues of material fact as to the accuracy of FTC accounting, summary judgment is inappropriate.

## Illinois Uniform Fraudulent Transfer Act

Finally, Nova seeks an entry of judgment against Frawley and Cullen on the alternative basis that the transfers at issue constitute fraudulent conveyances under two separate provisions of the Illinois Uniform Fraudulent Transfer Act (UFTA). First, a transfer is fraudulent as to a creditor if the debtor makes the transfer with actual intent to hinder, delay, or defraud any creditor. 740 ILCS 160/5(a)(1). Second, when a person transfers money or other property to another person without receiving anything in return, and the transferor is insolvent (or made insolvent by the transfer), the transfer is voidable even if there was no intent to hinder creditors. 740 ILCS 160/6(a).

In response, Frawley and Cullen note that a "'transfer,' for the purposes of avoidance under the UFTA, must dispose of or part with an 'asset' or an 'interest in an asset' [but that the] UTFA excludes from its definition of an 'asset' any property of the debtor 'to the extent it is

9

encumbered by a valid lien." *Blatstein*, 226 B.R. at 150 (citing 12 Pa. Cons.Stat. § 5101(b)); *see also* 740 ILCS 160/2(b) (defining "asset" as "property of a debtor" but not "property to the extent it is encumbered by a valid lien."); 740 ILCS 160/2(m) ( "A 'valid lien' means a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien."). Therefore, if the property at issue is not an asset, then the UFTA does not apply. *Rich v. Rich*, 405 S.E.2d 858, 861 (W. Va. 1991).

Here, there are genuine issues of material fact as to whether and to what extent Frawley held valid security interests in the assets of FTC. "[T]he determination of the validity and priority of [Frawley's] security interests in the assets of [FTC] proves crucial to this dispute" because a perfected security interest would be a valid lien excluded under the UFTA. *Blatstein*, 226 B.R. at 150. In addition, although Nova may be correct that Frawley is liable under the UFTA for the amount transferred above and beyond the value of his security interest, there are unresolved factual issues regarding how much money Frawley loaned to FTC, how much of this debt was paid off by FTC's payment of Frawley's personal expenses and cash taken from the corporation by Frawley, and how much of the debt was due and owing in December 2000, the time at which FTC transferred the $600,000 to Frawley personally. Accordingly, summary judgment on the basis of the UFTA is inappropriate at this point.

For the reasons above, Nova's Motion for Summary Judgment is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 16 Oct 2003